

**FILED**

**FOR PUBLICATION**

NOV 14 2016

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re: CHRISTOPHER KYLE FAGAN,  )   Case No. 15-28694-C-7
                                )
                    Debtor.     )
                                )
_____)

**OPINION REGARDING MILITARY DEBT DISCHARGE EXCEPTION**

**Before: Christopher M. Klein, Bankruptcy Judge**

_____

Peter Cianchetta, Elk Grove, California, for Debtor.

Phillip A. Talbert, Acting United States Attorney; Bruce A. Emard, Assistant United States Attorney, for United States.

CHRISTOPHER M. KLEIN, Bankruptcy Judge:

Inconspicuous exceptions to bankruptcy discharges lurking at 37 U.S.C. §§ 303a(e)(4) and 373(c) surprised the debtor who assumed that his debt to repay the unearned part of his Navy reenlistment bonus had been discharged. He urges that Bankruptcy Code § 727(b) (discharge "from all debts" not named in § 523) trumps statutes not named in Bankruptcy Code § 523, but Congress has said otherwise in a later-enacted statute. His motion for an order of contempt to enforce the discharge injunction is DENIED.

These obscure discharge exceptions, enacted in 2006 and 2008, warrant exegesis as a case of first impression. They anchor more than 60 repayment provisions scattered around Titles 10, 14, and 37 of the United States Code and have not been reviewed in reported bankruptcy decisions.

Facts

The debtor was involuntarily discharged from the Navy after serving fifteen months of a six-year reenlistment.

The Defense Finance and Accounting Service (DFAS) billed him $5,945.09 to recoup the unearned portion (1735 days) of his reenlistment bonus.

He filed a chapter 7 bankruptcy case on November 9, 2015, scheduling a $5,945.10 debt to DFAS, which he expected to be discharged.  His chapter 7 discharge was entered on February 22, 2016; the case closed four days later.

DFAS sent the debtor a bill dated March 24, 2016, noting that additional charges are assessed under 31 U.S.C. § 3717 and that the debt could be turned over to the Treasury for collection or offset from tax refunds and other federal benefits.  It was followed by another DFAS bill dated May 26, 2016.

The Department of the Treasury billed him on August 6, 2016, for $5,975.33, with a payment coupon showing a $7,648.42 debt.

The debtor filed a motion for an order of contempt in his reopened case on September 14, 2016.

He does not interpose a fact-based defense or question the amount of the debt, relying instead on the theory that Bankruptcy Code § 523 controls all exceptions to the chapter 7 discharge.

Issue

Do 37 U.S.C. §§ 303a(e) and 373(c) operate as exceptions to discharge under 11 U.S.C. § 727(b), thereby insulating the United States from exposure to liability for violation of the discharge injunction under 11 U.S.C. § 524(a)?

Jurisdiction

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. Enforcing the injunction against collecting a discharged debt, including determining whether such debt is discharged, is a core proceeding that may be heard and determined by a bankruptcy judge. 28 U.S.C. §§ 157(b)(2)(I) and (O).

Congress abrogated sovereign immunity for Bankruptcy Code § 524 discharge injunction violations. 11 U.S.C. § 106(a)(1).

Discussion

Two substantially identical discharge exceptions in Title 37 — 37 U.S.C. § 303a(e)(4) and § 373(c) — are considered because the record is ambiguous about the statutory basis for the debt. They amount to two paths to the same result. The debtor still has to pay the unearned portion of his Navy reenlistment bonus.

I

If, as implied by the invocation of § 303a(e)(4), the debtor reenlisted under the authority granted by 37 U.S.C. § 308 ("Special pay: reenlistment bonus"), then his repayment obligation is triggered by § 308(d)[1] and is restated and

---

[1]Section 308(d) provides:

(d) A member who does not complete the term of enlistment for which a bonus was paid to the member under this section, or a member who is not technically qualified in the skill for which a bonus was paid to the member under this section, shall be subject to the repayment provisions of section 303a(e) of this title.

37 U.S.C. § 308(d).

implemented at § 303a(e).[2]

If he reenlisted under the authority of 37 U.S.C. § 331 ("General bonus authority for enlisted members"), then his repayment obligation is triggered by § 331(g)[3] and is restated and implemented at § 373(a).[4]

---

[2]Section 303a(e)(1)(A):

(e)(1)(A) Except as provided in paragraphs (2) and (3) [sole survivorship and combat-related exceptions], a member of the uniformed services who receives a bonus or similar benefit and whose receipt of the bonus or similar benefit is subject to the condition that the member continue to satisfy certain eligibility requirements shall repay to the United States an amount equal to the unearned portion of the bonus or similar benefit if the member fails to satisfy the eligibility requirements and may not receive any unpaid amounts of the bonus or similar benefit after the member fails to satisfy the requirements, unless the Secretary concerned determines that the imposition of the repayment requirement and termination of the payment of unpaid amounts of the bonus or similar benefit with regard to the member would be contrary to a personnel policy or management objective, would be against equity and good conscience, or would be contrary to the best interests of the United States.

37 U.S.C. § 303a(e)(1)(A).

[3]Section 331(g) provides:

(g) Repayment. A person or member who receives a bonus under this section and who fails to complete the period of service, or meet the conditions of service, for which the bonus is paid, as specified in the written agreement under subsection (d), shall be subject to the repayment provisions of section 373 of this title.

37 U.S.C. § 331(g).

[4]Section 373(a) provides:

(a) Repayment and termination. Except as provided in subsection (b) [sole survivorship, combat-related, and discretionary exceptions], a member of the uniformed services who is paid a bonus, incentive pay, or similar benefit, the receipt of which is contingent upon the

Sections 303a and 373 collectively are cross-referenced by, and anchor, more than 60 separate uniformed services pay provisions that entail repayment obligations.

II

The discharge exceptions at § 303a(e)(4) and § 373(c) are identical.[5]

Each excepts repayment debts under §§ 303a and 373(a) from any discharge order entered in a bankruptcy case within five years after the trigger date of the debt. Specifically, they provide "discharge in bankruptcy under title 11 does not discharge a person from such debt if the discharge order is entered less than five years after" termination of the service or the agreement on which the debt is based.[6]

---

member's satisfaction of certain service or eligibility requirements, shall repay to the United States any unearned portion of the bonus, incentive pay, or similar benefit if the member fails to satisfy any such service or eligibility requirement, and the member may not receive any unpaid amounts of the bonus, incentive pay, or similar benefit after the members fails to satisfy such service or eligibility requirement.

37 U.S.C. § 373(a).

[5]The only difference is that one uses the word "subsection" where the other uses "section."

[6]Sections 303a(e)(4) and 373(c) each provide:

An obligation to repay the United States under this subsection is, for all purposes, a debt owed the United States. A discharge in bankruptcy under title 11 does not discharge a person from such debt if the discharge order is entered less than five years after —
(A) the date of the termination of the agreement or contract on which the debt is based; or
(B) in the absence of such an agreement or contract,

A

Section 302a(e) was added to § 303a in 2006.  Act of Jan. 6, 2006, Pub. L. 109-163, § 687, 119 Stat. 3326, 3336.

The bankruptcy discharge exception, initially enacted as § 303a(e)(3), was redesignated § 303a(e)(4) in 2009.  Act of Oct. 28, 2009, Pub. L. 111-84, § 617(a), 123 Stat. 2190, 2354.

The text of § 303a(e)(4) has not been amended since 2006.

B

Section 373(c) was enacted in 2008 and plainly was cloned from § 303a(e).  Act of Jan. 28, 2008, Pub. L. 110-181, § 661, 122 Stat. 3, 163.

The text of § 373(c) has not been amended since 2008.

III

The debtor served only fifteen months of a sixty-month reenlistment for which he had received a reenlistment bonus of about $7,500.00.  DFAS calculated that the unearned portion of the bonus was $5,945.09.  That sum is owed to the United States by virtue of the statutes described above.

The chapter 7 case was filed with the expectation that the debt to the United States would be discharged.  This motion for an order of contempt brings § 303a(e)(4) and § 373(c) into play.

---

the date of the termination of the service on which the debt is based.

37 U.S.C. §§ 303a(e)(4) & 373(c) (§ 373(c): "section" vice "subsection").

A

This is a situation in which the parties rely on what the debtor contends are conflicting statutes.

The 1978 Bankruptcy Code used mandatory terms in § 727(b) naming the Bankruptcy Code § 523 nondischargeability provisions as the sole source of exceptions to discharge:

> § 727(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

11 U.S.C. § 727(b).

Read literally, the only exceptions to the § 727 discharge are those stated in § 523.  The debtor relies on that language.

In 2006 and 2008, Congress used unambiguous terms referring to title 11 at two places in title 37 to create exceptions to discharge without mentioning Bankruptcy Code §§ 727(b) or 523: "A discharge in bankruptcy under title 11 does not discharge a person from such debt..."  37 U.S.C. §§ 303a(e)(4) & 373(c).

The usual canon of statutory construction where statutes conflict is to give effect to each and to construe a later statute as implicitly amending an earlier, more general statute. Smith v. Robinson, 468 U.S. 992, 1024 (1984); Acosta v. Gonzales, 439 F.3d 550, 555 (9th Cir. 2006).

Where a conflict is irreconcilable, the more recent statute governs.  Watt v. Alaska, 451 U.S. 259, 268 (1981).

Here, the debtor is relying on a 1978 statute as a defense against conflicting statutes enacted in 2006 and 2008.

7

1    The 2006 and 2008 statutes are more specific than the 1978
2    statute.  If they do not surmount Bankruptcy Code § 727(b), then
3    they would have no effect.  It would, however, be absurd to
4    construe them as having no effect in the face of an earlier, more
5    general statute.  Congress must have meant for those two statutes
6    to mean something.  That something is an implicit amendment to
7    the earlier statute adding an extra "except" clause to Bankruptcy
8    Code § 727(b).

9    It follows that § 303a(e)(4) and § 373(c), in order to be
10   given any effect at all, must be construed as creating exceptions
11   to bankruptcy discharge regardless of the seemingly-comprehensive
12   language of Bankruptcy Code § 727(b).

13   To be sure, Congress invites confusion when it strews
14   bankruptcy-related statutes around other titles of the U.S. Code
15   without a cross-reference in the Bankruptcy Code.  It may even
16   offend internal legislative procedural rules to circumvent the
17   congressional committees responsible for bankruptcy legislation
18   to sneak bankruptcy provisions into other legislation, but those
19   are internal housekeeping matters for Congress.

20   The statutes enacting § 303a(e)(4) and § 373(c) are valid
21   acts of Congress passed by the House of Representatives and the
22   Senate and presented to, and signed by, the President.  For
23   better or worse, the Bankruptcy Power entitles Congress to do
24   what it likes with entitlements in bankruptcy.  U.S. Const. art.
25   I, § 8; Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 21 (2000).

26

27                                B

28   The exceptions to discharge in § 303a(e)(4) and § 373(c) are

1  not absolute.

2      By their terms, those statutes permit discharge in

3  bankruptcy of unearned military bonus and incentive payments if

4  the discharge is entered more than five years after termination

5  of the agreement on which the debt is based or, if no such

6  agreement, termination of service.   37 U.S.C. §§ 303a(e)(4)

7  & 373(c).

8

9                                 1

10     The debtor's chapter 7 discharge would have been effective

11  to discharge his debt if he had waited to file a bankruptcy case

12  for nearly five years, instead of six months, after leaving the

13  Navy.  His chapter 7 discharge was entered February 22, 2016.  To

14  be sure, there are ways to defer the entry of discharge in

15  chapter 7 cases, but those deferrals are ordinarily measured in

16  months, not years.  Fed. R. Bankr. P. 4004(c).

17

18                                 2

19     While § 303a(e)(4) and § 373(c) purport to apply to all

20  bankruptcy discharges, the operation of the five-year rule in

21  those sections leaves open the possibility of discharging

22  § 303a(e)(4) and § 373(c) debt in chapter 11, 12, and 13 cases.

23     Chapter 13 plans commonly provide for payments over a period

24  of five years.  11 U.S.C. § 1325(b)(4).

25     Discharge is not "entered" until after completion of all

26  payments under the plan.  11 U.S.C. § 1328(a).

27     Thus, a discharge entered after completing a sixty-month

28  payment plan in a chapter 13 case filed after a § 303a(e)(4) or

§ 373(c) debt arises would qualify for discharge under the five-year rule in those sections.

C

It is also noted that § 303a(e)(1) and § 373(b)(1) each permit the Secretary concerned to determine that the imposition of the repayment requirement "would be contrary to a personnel policy or management objective, would be against equity and good conscience, or would be contrary to the best interests of the United States."  37 U.S.C. §§ 303a(e)(1) & 373(b)(1).  This language confers constrained discretion and suggests that defenses focused on those grounds could be asserted.

Regulations are authorized to describe circumstances in which an exception to repayment may be granted.  37 U.S.C. §§ 303a(e)(1) & 373(b)(1).

Such regulations should address the statutory standards for excusing payment:  personnel policy or management objective; equity and good conscience; and best interests of the United States.  Cf. In re [Redacted] [sic], 2008 Westlaw 10707636 (D.O.H.A.C.A.B. 2008) (DoD Claims Appeals Bd. disclaiming jurisdiction and citing § 303a(e)(1)); Vol. 7A, DoD Fin. Mgmt. Reg. – Military pay Policy & Procedures, DoD 7000.14R, 090501-090504 (Recoupment).

An interesting question that can be left to another day is whether a bankruptcy court could review (presumably after exhaustion of administrative remedies) whether repayment would, for example, be "against equity and good conscience" within the meaning of 37 U.S.C. §§ 303a(e)(1) & 373(b)(1).

10

1   The debtor has identified no facts that might suggest that
2   one of these statutory exceptions ought to apply in his case.

3

4                                     IV

5   The procedure applicable to this dispute also deserves
6   review because of a confusing Ninth Circuit decision.

7

8                                      A

9   The question of the discharge status of the unearned portion
10  of a military reenlistment bonus can arise in three distinct,
11  albeit overlapping, contexts.

12  First, during the case, it could be the subject of an
13  objection to claim under Rule 3007.  Fed. R. Bankr. P. 3007;
14  Ryan v. Defense Fin. & Accounting Serv. (In Ryan), 2016 Westlaw
15  402201 at *1 (Bankr. E.D.N.C 2016).

16  Second, during or after the case, it can be raised in an
17  adversary proceeding to determine the dischargeability of a debt.
18  Fed. R. Bankr. P. 7001(6); Ryan, 2016 Westlaw 402201 at *1.

19  Third, after entry of discharge, it can, as occurred in this
20  case, form the essential predicate of a Rule 9020 motion for an
21  order of contempt to enforce the discharge injunction.  11 U.S.C.
22  § 524(a); Fed. R. Bankr. P. 9020; Barrientos v. Wells Fargo Bank,
23  N.A., 633 F.3d 1186, 1189-91 (9th Cir. 2011).

24

25                                      B

26  The debtor here raised the matter after entry of discharge
27  as a motion for an order of contempt pursuant to Rule 9020

28

governed by Rule 9014.[7]  This was consistent with the <u>Barrientos</u> decision.  <u>Barrientos</u>, 633 F.3d at 1189, <u>construing</u> <u>Walls v. Wells Fargo Bank, N.A.</u>, 276 F.3d 502, 506-07 (9th Cir. 2002).

It should be noted, however, that a dictum in the Ninth Circuit's <u>Barrientos</u> decision seems to widen its split with the First Circuit on procedure for enforcing the § 524(a) discharge injunction.  <u>Compare</u> <u>Barrientos</u>, 633 F.3d at 1190, <u>with</u> <u>Bessette v. Avco Fin. Servs., Inc.</u>, 230 F.3d 439, 443-45 (1st Cir. 2000). <u>Barrientos</u> neither noted nor discussed <u>Bessette</u>.

The First Circuit in <u>Bessette</u> held that enforcement of the § 524 discharge injunction as a § 105 contempt matter need not be in the court that entered the discharge and permitted enforcement to be raised in a civil action that included class action allegations.  <u>Bessette</u>, 230 F.3d at 446; 11 U.S.C. § 105.  It remanded the civil action to district court to consider whether it would handle contempt-of-discharge enforcement proceeding or refer the matter (including the class certification question) to the bankruptcy court that had entered the discharge.  <u>Id</u>.

The Ninth Circuit in <u>Barrientos</u> affirmed the bankruptcy court's dismissal of a one-count adversary proceeding seeking an injunction, a fine, declaratory relief, and attorney's fees on account of alleged violation of the § 524 discharge injunction. It construed its precedent in <u>Walls</u> that there is no private

---

[7]Rule 9020 provides:

Rule 9020.  Contempt Proceedings.  Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest.

Fed. R. Bankr. P. 9020.

cause of action for violation of the § 524 discharge injunction and that contempt under § 105 is the sole remedy, as also (splitting with <u>Bessette</u>) requiring that the contempt be determined by the court that issued the discharge order.[8] <u>Barrientos</u>, 633 F.3d at 1188-89.[9]

Having clarified the law of the circuit that <u>Walls</u> limits discharge injunction enforcement to contempt proceedings under § 105 that must be decided by the court whose order is to be enforced, the <u>Barrientos</u> court gratuitously muddied the waters. In a dictum based on a dubious reading of the rules of procedure, it appeared to say that a contempt issue never may be presented in an adversary proceeding and that a party may complain of a § 524 discharge injunction violation only by way of motion under Rule 9020 as a contested matter governed by Rule 9014.[10]

---

[8]The adversary proceeding was filed in the court that issued the discharge.  In re Adolfo Barrientos, No. 3:06-bk-01685.

[9]The Eleventh Circuit agrees with the Ninth Circuit that a contempt action must be pursued in the bankruptcy court that entered the discharge.  <u>Alderwoods Grp., Inc. v. Garcia</u>, 682 F.3d 958, 970-71 (11th Cir. 2012) (chapter 11) ("A debtor who believes that the discharge injunction has been violated may file a contempt action with the bankruptcy court that entered the discharge injunction, not with another court.").

[10]Here is the transition from holding to dictum:

> We therefore rule that <u>Walls</u> is sufficient to dispose of the present case.  However, even in the absence of <u>Walls</u>, it appears that the Bankruptcy Rules require that an action for contempt arising out of the violation of an order issued in a bankruptcy case must be brought by motion in the bankruptcy case.

<u>Barrientos</u>, 633 F.3d at 1189.

The more-accurate statement is that the Bankruptcy Rules permit an action for contempt arising out of the violation of an

This doubled the width of the existing split with the First Circuit. <u>Walls</u> and <u>Bessette</u> already disagreed on whether another court could entertain a § 105 contempt-of-discharge matter. The <u>Barrientos</u> dictum that Rule 9020 "mandates" party-initiated contempt be a Rule 9014 contested matter implies that it can never be included in an adversary proceeding. This conflicts with <u>Bessette</u> where contempt-of-discharge was allowed to be a count in an civil action. <u>Bessette</u>, 230 F.3d at 445-47.

A closer look at <u>Barrientos</u>, however, suggests that the conflict with the First Circuit is less than meets the eye. The split is real, of course, regarding which judicial officer has authority over § 524 discharge injunction enforcement. But the procedural split can be bridged by the overlapping structure of the Bankruptcy Rules regarding contested matters and adversary proceedings. The history of Rule 9020 indicates that the rule permits, but does not require, bankruptcy contempt issues to be presented in Rule 9014 contested matters.

C

The statements in the <u>Barrientos</u> dictum about the procedural differences between Rule 9014 "contested matters" and Rule 7001 adversary proceedings are inaccurate. The problem is that they create the misimpression that contested matters and adversary proceedings are mutually exclusive — they are not.

---

order issued in a bankruptcy case to be brought by motion in the bankruptcy case.

1

The essential characteristic of Rule 9014 contested matters is streamlined procedure that permits litigation within a matter of weeks without sacrificing too much due process.

The hallmark of the contested matter rules is the power of the court to tailor the rules to fit the situation.  A pared-down set of the adversary proceeding rules that excludes most of the pleading and scheduling rules presumptively applies.[11]  But those are a minimum, and the bankruptcy court has the flexibility to direct that any or all of the other adversary proceeding rules apply in any particular situation.[12]

In contrast, Rule 7001 adversary proceedings, which are essentially conventional civil actions under the Federal Rules of

---

[11]Rule 9014(c) provides, in relevant part:

(c) Application of Part VII rules.  Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028-7037, 7041, 7052, 7054-7056, 7064, 7069, and 7071.  The following subdivision of Fed. R. Civ. P. 26, as incorporated by Rule 7026, shall not apply in a contested matter unless the court directs otherwise: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony) and 26(a)(3) (additional pre-trial disclosure), and 26(f) (mandatory meeting before scheduling conference/discovery plan).

Fed. R. Bankr. P. 9014(c) (first two sentences).

[12]The relevant part of Rule 9014(c) provides:

The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order.

Fed. R. Bankr. P. 9014(c) (last two sentences).

1  Civil Procedure, entail the more formal and time-consuming
2  process of complaint, answer, counterclaim, cross-claim, third-
3  party complaint, dilatory motions, scheduling orders, and
4  pretrials that do not ordinarily apply in contested matters.

5       The Barrientos decision placed emphasis on the fact that
6  § 524 discharge injunction enforcement matters are not listed in
7  Rule 7001 as requiring an adversary proceeding and that Rule 9020
8  specifies that Rule 9014 "governs" a motion for an order of
9  contempt made by the United States trustee or a party in
10 interest, from which the court of appeals concluded that the rule
11 "mandates" a contested matter and forbids treating such a matter
12 in an adversary proceeding. Barrientos, 633 F.3d at 1190.  The
13 conclusion does not follow from the premise.

14
15                              2
16       The primary significance of the matters that are listed at
17 Rule 7001 is that such matters are regarded as of sufficient
18 importance to require the due process and time and expense of
19 being processed as a full-blown civil action, i.e. adversary
20 proceeding, under the Federal Rules of Civil Procedure.  A
21 bankruptcy judge, like a district judge, risks disapproval on
22 appeal whenever short shrift is given to those rules.

23       Rule 9014 contested matters incorporate some of those rules,
24 including discovery, consolidation, taking evidence in the same
25 manner as an adversary proceeding, making findings of fact and
26 conclusions of law, and post-judgment relief.  Fed. R. Civ. P.
27 26, 28-37, 42, 43-44.1, 52, 59-60, incorporated by Fed. R. Bankr.
28 P. 7026, 7028-37, 7042, 7052, 9017, 9023-24, further incorporated

1 <u>by</u> Fed. R. Bankr. P. 9014(c).

2     In addition, as noted, the court may order that all of the
3 adversary proceeding rules apply in a particular contested
4 matter, making contested matter procedure potentially congruent
5 with adversary proceeding procedure.   Fed. R. Bankr. P. 9014(c).
6 At that juncture, the distinction between adversary proceeding
7 and contested matter becomes a distinction without a difference.

8

9                                  3

10     Also significant is the applicability of the consolidation
11 rule to contested matters.   Fed. R. Civ. P. 42, <u>incorporated by</u>
12 Fed. R. Bankr. P. 7042 & 9014(c).   The bankruptcy court has the
13 discretion to apply Civil Rule 42 to consolidate a claim made in
14 a contested matter with a claim made in an adversary proceeding.

15     If a contested matter may be consolidated with a adversary
16 proceeding, then it seems nonsensical to forbid alleging a
17 contested matter issue as a count in an adversary proceeding.

18     There are, of course, practical reasons for a bankruptcy
19 court to decline to consolidate a motion for an order of contempt
20 with a claim being made in an adversary proceeding.   Confusion of
21 remedies is one example.   Indeed, it appears that the <u>Barrientos</u>
22 bankruptcy judge dismissed the one-count adversary proceeding
23 because parties were confusing adversary proceeding remedies with
24 contempt remedies.   Such a ruling is within the discretion of a
25 trial judge who is trying to maintain order and promote clarity.

26

27                                  4

28     Coming back to Rule 9020, the <u>Barrientos</u> dictum suggests

that the rule "mandates" contested matter procedure, to the
exclusion of adversary proceeding procedure, for § 524 discharge
injunction contempt matters.  The history of Rule 9020, however,
suggests that the more accurate description is that Rule 9020,
as revised in 2001, merely "authorizes" contested matter
procedure for § 524 discharge injunction contempt matters in an
effort to streamline theretofore cumbersome contempt procedures.[13]

What then to make of what the Ninth Circuit was deciding in
Barrientos?  A clue is found in the decision's agreement with the

---

[13]The Advisory Committee Note to the 2001 Amendment of Rule
9020 providing for Rule 9014 contested matter procedure explains
the background:

> This rule, as amended in 1987, delayed for ten days from
> service the effectiveness of a bankruptcy judge's order of
> contempt and rendered the order subject to de novo review by
> the district court.  These limitations on contempt orders
> were added to the rule in response to the Bankruptcy
> Amendments and Federal Judgeship Act of 1984, Pub. L. 98-
> 353, 98 Stat. 333, which provides that bankruptcy judges are
> judicial officers of the district court, but does not
> specifically mention contempt power.  See 28 U.S.C. § 151.
> As explained in the committee note to the 1987 amendments to
> this rule, no decisions of the courts of appeals existed
> concerning the authority of a bankruptcy judge to punish for
> either civil or criminal contempt under the 1984 Act and,
> therefore, the rule as amended in 1987 "recognizes that
> bankruptcy judges may not have the power to punish for
> contempt."  Committee Note to 1987 Amendments to Rule 9020.

> Since 1987, several courts of appeals have held that
> bankruptcy judges have the power to issue civil contempt
> orders.  [citations omitted.]  To the extent that Rule 9020,
> as amended in 1987, delayed the effectiveness of civil
> contempt orders and required de novo review by the district
> court, the rule may have been unnecessarily restrictive in
> view of the judicial decisions recognizing that bankruptcy
> judges have the power to hold parties in civil contempt.

Fed. R. Bankr. P. 9020, Advisory Comm. Note to 2001 Amendment.

Second Circuit's <u>Kalikow</u> decision where the bankruptcy court, like the bankruptcy court in <u>Barrientos</u>, required a Rule 9020 contested matter, rather than by adversary proceeding. <u>Solow v. Kalikow (In re Kalikow)</u>, 602 F.3d 82, 93-94 (2d Cir. 2010).

<u>Kalikow</u> held that it was not error to proceed by way of contested matter and rejected argument that an adversary proceeding was required. Thus, whether to proceed by way of contested matter or adversary proceeding is a discretionary matter for the bankruptcy court that issued the discharge to determine.

There are practical reasons why a bankruptcy judge might use adversary proceeding procedure as a case management device to corral a complex situation headed toward trial. Fractious parties exchanging salvoes in contested matter motion papers can be herded towards more focused trial preparation if required to employ the format of complaint and answer, as Rule 9014(c) permits. This helps sharpen the focus and narrow issues for trial. Likewise, other issues and parties that do necessitate an adversary proceeding may overlap the contempt and warrant simultaneous treatment.

If the bankruptcy court in <u>Barrientos</u> (which had issued the discharge), instead of dismissing, had elected to address the § 524 discharge injunction contempt in an adversary proceeding, limiting relief to that which is available on a motion for contempt, it seems unlikely that the Ninth Circuit would have reversed for having afforded too many procedural protections.

It follows that the law of the Ninth Circuit after <u>Wall</u> and <u>Barrientos</u> should be understood as holding that the remedy for

violation of the § 524 discharge injunction is limited to
contempt, which ordinarily is a Rule 9014 contested matter and
which must be decided by the court that entered the discharge.

Reading <u>Barrientos</u> in conjunction with <u>Kalikow</u> and <u>Bessette</u>
reveals that all three circuits agree that the choice whether to
permit a Rule 9020 contempt matter to be consolidated with, or
raised in, an adversary proceeding is up to the discretion of the
bankruptcy court.  A bankruptc
y judge's decision, as in <u>Barrientos</u>, to dismiss an adversary
proceeding in favor of requiring a stand-alone Rule 9020
contested matter is reviewed for abuse of discretion.  Likewise,
a decision not to dismiss an adversary proceeding that contains a
count alleging contempt should receive the same deferential
review.

***

The court being persuaded that Congress validly exercised
its power to except certain military-related debts from discharge
in bankruptcy, the debt being conceded, and no matters in the
nature of defense having been asserted, the debtor's Motion for
an Order of Contempt pursuant to Federal Rule of Bankruptcy
Procedure 9020 is DENIED.

An appropriate order will issue.

Dated:   November 14, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

**Service List**

This document does not constitute a certificate of service. The Office of the Clerk is directed to serve the parties listed below a separate copy of the attached Order through the BNC.

J. Michael Hopper
PO Box 73826
Davis CA 95617

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento CA 95814

Bruce A. Emard
501 I Street, Suite 10-100
Sacramento CA 95814

Peter L. Cianchetta
8788 Elk Grove Blvd. Ste. 2A
Elk Grove CA 95624